IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BARNSTORMERS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-10-CV-261-KC |
| | § | |
| WING WALKERS, LLC and JAMES CLEMENTS, | § § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiff's Motion for Entry of Default Judgment, ECF No. 45 ("Motion"), and Defendant Wing Walkers, LLC's "Notice of Motion to Withdraw; Third Motion to Withdraw; and Response to Order to Show Cause" ("Third Motion to Withdraw") 2, ECF No. 41. The Court also considered Defendant Wing Walkers's Motion to Withdraw, ECF No. 22. For the reasons set forth below, Plaintiff's Motion is **GRANTED** in part, Defendant Wing Walkers's Third Motion to Withdraw is **GRANTED**, and Defendant Wing Walkers's Motion to Withdraw is **DENIED AS MOOT**.

### I.  BACKGROUND

The following facts are taken from the Complaint and from the Motion. Defendants have denied these allegations in their Answers filed seven months ago, but have not responded to the Motion. *See* Answer of Defendant Wingwalkers, LLC, ECF No. 20; Answer of Defendant James

1

Clements, ECF No. 21.[1]

Plaintiff owns and operates a website that, among other things, displays banner and classified advertisements relating to aviation. Compl. ¶ 11, ECF No. 15. Plaintiff either holds the registered copyright or has the right to obtain a registered copyright over its website. *Id.* ¶ 12. Defendants own and operate similar, competing websites. *Id.* ¶ 13; Mot. 2. Defendants obtained from Plaintiff's website fifty copyrighted advertisements, duplicated them, and displayed them on Defendants' websites. Compl. ¶ 18. Defendants continued to copy advertisements after Plaintiff contacted them and asked them not to. *Id.* ¶ 14.

In addition, Defendants created at least eighty-eight separate user accounts on Plaintiff's website. Mot. 2. Defendants used these accounts to place advertisements on Plaintiff's website for their own website. *Id.* Plaintiff contacted Defendants and asked them to cease accessing Plaintiff's website and placing unauthorized advertisements, but Defendants continued to access Plaintiff's website in violation of those terms of use. *Id.* Plaintiff then filed this action and asserted claims for direct, contributory, and vicarious copyright infringement; unfair competition under 15 U.S.C. § 1125(a), the California Business and Professions Code, and the common law; and a violation of the Computer Fraud and Abuse Act (CFAA). Compl. ¶¶ 17-33.

Upon filing the Answer for Defendant Wing Walkers, counsel for Wing Walkers, Mr. Clement Cheng ("Cheng"), simultaneously filed a Motion to Withdraw. *See* Mot. to Withdraw, ECF No. 22. Cheng sought to withdraw as attorney of record for Wing Walkers because his

---

[1] Despite Defendants' Answers, the Court accepts the facts from the Complaint because default judgment is being entered against Defendants as a sanction for their refusal to comply with this Court's Orders. *See* Fed. R. Civ. P. 16(f), 37(b). Default judgments are in effect admissions of well-pleaded allegations of fact made in the plaintiff's pleadings. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

representation agreement with the corporation provided that the representation would terminate if the case were to be transferred to the Western District of Texas from the Southern District of California. *Id.* at 1. The Court took the Motion to Withdraw under advisement because Wing Walkers had not engaged replacement counsel, and corporations may not appear in court proceedings except through counsel. Order, ECF No. 25. Cheng later filed a Second Motion to Withdraw which restated the same argument as the first but also added that the Wing Walkers's corporate charter issued by the state of Delaware had been forfeited and resigned. 2d Mot. to Withdraw 2, ECF No. 32. The Court denied the Second Motion to Withdraw, again noting that Wing Walkers had not engaged substitute counsel. Order 2, ECF No. 33.

In the Scheduling Order entered on September 13, 2010, the Court ordered the parties to schedule an alternative dispute resolution proceeding, and to provide the Court with the date of that scheduled proceeding and the name and address of the dispute resolution provider by no later than December 31, 2010. Scheduling Order 2, ECF No. 26. On December 29, 2010, Plaintiff notified the Court that it had been unsuccessful in trying to confer with Defendants for the purposes of arranging a date for mediation and a mediator to conduct the proceeding. Notice Regarding Stipulated Dispute Resolution Provider 1, ECF No. 34. Specifically, Plaintiff stated that Cheng had been unable to contact Wing Walkers for the purpose of discussing mediation. *Id.* Plaintiff also stated that Defendant James Clements had not responded to Plaintiff's attempted contacts. *Id.*

On January 4, 2011, the Court ordered Defendants to show cause why they had not complied with its Scheduling Order. Order ("First Order to Show Cause") 1, ECF No. 35. On January 11, 2011, Defendant Clements sent a letter to the Court indicating a willingness to

3

participate in alternative dispute resolution, and represented that he had sent an email to the same effect to Plaintiff's counsel. Correspondence, ECF No. 37. On January 13, 2011, Plaintiff filed another notice, stating that Cheng continued to be unable to contact Wing Walkers and that Defendant Clements had not responded to Plaintiff's counsel's emails or phone calls. Second Notice Regarding Stipulated Alternative Dispute Resolution Provider 1, ECF No. 38. On January 20, 2011, the Court ordered Defendants to show cause why they had not complied with the Court's Scheduling Order and First Order to Show Cause. Order ("Second Order to Show Cause") 2-3, ECF No. 39. In its Second Order to Show Cause, the Court put Defendants on notice that a failure to show cause would result in entry of judgment against Defendants. *Id.* at 3. On January 25, 2011, Cheng responded to the Court's Second Order to Show Cause, stating, "The current circumstances seem to show that there is no way for Wingwalkers, LLC to comply with the court scheduling order, or to otherwise proceed with defending itself in this action, so it appears that the court has no alternative other than to enter judgment in favor of plaintiff." 3d Mot. to Withdraw 2. Cheng also filed the Third Motion to Withdraw simultaneously with the response to the Second Order to Show Cause, seeking to withdraw because he was "unable to locate any principal of Wingwalkers LLC, has no relevant documents related to Wingwalkers LLC . . . , and [was] unable to effectively represent Wingwalkers LLC." *Id.*

In light of Defendants' repeated failure to comply with the Court's orders, on February 7, 2011, the Court sanctioned Defendants by entering judgment against them, as provided by Rules 16(f) and 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure. Order ("Notice of Sanctions") 4, ECF No. 42. The Court ordered Plaintiff to submit evidence of its damages, and further ordered it to submit "evidence of its attorneys' fees and costs incurred in complying with the

Court's orders relating to the scheduling of the alternative dispute resolution proceeding" in a form "separate from all other fees and costs incurred in prosecuting this case to which Plaintiff may be entitled as damages." *Id.* Defendants submitted evidence of damages in its Motion, but did not categorize the attorneys' fees as the Court requested. *See* Decl. of Ben Lila ("Lila Decl."), ECF No. 45-3.

## II. DISCUSSION

### A. Default Judgment as Sanction

Federal Rule of Civil Procedure 16(f) provides, "On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Rule 37(b)(2)(A)(ii)-(vii) provides for a range of sanctions, including "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Default judgment is a harsh sanction that should be used only as a last resort. *U.S. ex rel. M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Before entering default judgment as a sanction, courts should consider

> (1) whether the violation was willful or in bad faith rather than simply due to inability to comply, (2) whether less drastic sanctions would effect the goals of Rule 37(b), (3) whether the violation prejudiced the opposing party's trial preparation, and (4) whether the client knew of or participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.

*Shipco*, 814 F.2d at 1013 (citing *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir.1985)). Courts must also "consider expressly the effectiveness of less severe sanctions." *Id.* at 1014 (citing *Batson*, 765 F.2d at 516). Where a violation is willful or a result of bad faith, entry of default judgment is especially appropriate. *See Technical Chem. Co. v. IG-LO Prod. Corp.*, 812

5

F.2d 222, 224 (5th Cir. 1987).

Addressing the *Batson* factors in order, Defendants' violations appear to be willful. Despite being given repeated chances to explain what was originally a relatively minor issue, Defendants have repeatedly ignored this Court's Orders. Defendant Clements at one point did make a nominal showing of intent to comply by sending a brief letter, but he never explained his previous failure to contact Cheng, respond to opposing counsel, or comply with the Court's Scheduling Order. And indeed, since then neither Defendant has made any contact with Plaintiff or the Court, and mail sent to Clements has been returned as undeliverable. Defendants are aware of their responsibilities, but simply refuse to comply.

Second, given this complete failure to acknowledge the Court's orders, much less comply with them, the Court is aware of no less drastic sanction that would achieve compliance. The Court gave Defendants two separate notices that they faced the possibility of sanctions, including the severe sanction of default judgment, before it initially assessed the sanction. *See* First Order to Show Cause; Second Order to Show Cause. Additionally, it has been almost three months since the Court first indicated that it would assess this sanction against Defendants, and they still have not moved for relief from the sanction or responded in any other fashion. *See* Notice of Sanctions (indicating it was entered on February 7, 2011). Any of the other sanctions listed in Rule 37(b)(2)(A), such as directing that certain facts be taken as established or striking Defendants' pleading, would only further delay this action, which is already eighteen months old.

Third, the Court finds that Defendants' behavior has greatly prejudiced the opposing party's ability to prepare for trial. It is impossible to hold a mediation proceeding with only one side. Additionally, it appears that the entire discovery process has been adversely impacted.

6

Fourth, Defendants here are directly responsible for the violations. Defendant Clements is proceeding pro se, so he is necessarily directly responsible for his conduct. Defendant Wing Walkers is responsible for its violations, not Cheng, given that Cheng cannot even contact his client.

For these reasons, the Court finds that entry of default judgement against both Defendants is warranted at this time.

B.      **Basis in the Pleadings for Default Judgment**

A default judgment will only be rendered if there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment is in effect an admission by the defendant of the plaintiff's well-pleaded allegations of fact that conclusively establishes those facts and bars the defendant from contesting the facts later. *Id.* However, a default judgment does not conclusively determine the amount of damages. *Shipco*, 814 F.2d at 1014. According to Federal Rule of Civil Procedure 55, which governs default judgments generally, a court has discretion to convene an evidentiary hearing on the issue of damages. Fed. R. Civ. P. 55(b)(2)(B). A court should hold an evidentiary hearing to ascertain the amount of damages "unless the amount claimed is a liquidated sum or one capable of mathematical calculation," in which case a hearing is not necessary. *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979); *see also James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Here, Plaintiff has provided evidence of its damages in the form of liquidated sums or amounts capable of mathematical calculation, so an evidentiary hearing is not necessary. Plaintiff has presented evidence of damages relating to its claims for willful direct copyright

infringement; for unfair competition under federal statutory law, California statutory law, and California common law; and for a violation of the CFAA. Mot. 2-3. The Court addresses each in turn.

### 1. Copyright infringement

#### a. Sufficient basis in the pleadings

To make out a claim for copyright infringement, a plaintiff must show that "(1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quotation and citations omitted). To establish the second element, copying, a plaintiff must prove "(1) factual copying and (2) substantial similarity." *Id.* (quotation omitted). A plaintiff may prove factual copying through direct evidence of copying or, more commonly, through circumstantial evidence of "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367-68 (5th Cir. 2004), *overruled on other grounds by Reed Elsevier, Inc. v. Muchnick*, --- U.S. ----, 130 S.Ct. 1237, 1243 (2010) (quotation and citation omitted). A claim for willful copyright infringement requires, in addition, a showing that the defendant knowingly or recklessly infringed on a plaintiff's copyright. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009).

Plaintiff has alleged that it is the owner of a valid copyright over the "text, compilation, and editing" of its website. *See* Lila Decl. Ex. A; Compl. ¶ 12. Plaintiff has also alleged that Defendants factually copied Plaintiff's work and that Defendants' copy bore a substantial similarity to Plaintiff's work. *See* Compl. ¶ 14; Compl. Exs. A-B. Those same allegations also

indicate Defendants had access to Plaintiff's copyrighted work and a probative similarity between that work and work appearing on Defendants' website. *See* Compl. ¶ 14; Compl. Exs. A-B. Finally, Plaintiff has alleged that Defendants knowingly or recklessly infringed on Plaintiff's copyright. *See* Compl. ¶ 14. Therefore, the Court finds a sufficient basis in the pleadings for judgment on Plaintiff's copyright claim.

### b. Statutory damages

Plaintiff has elected, pursuant to 17 U.S.C. § 504(c), to recover statutory damages. Mot. 2-3. Pursuant to that section, where the court finds a defendant infringed on one of Plaintiff's copyrights the court may award Plaintiff between $750 and $30,000, as the court considers just. 17 U.S.C. § 504(c)(1). Where the court finds the infringement was committed willfully, the court may award up to $150,000. *Id.* § 504(c)(2). An award of statutory damages is particularly appropriate in the default judgment context "because a defaulting party has information needed to prove actual damages." *Wondie v. Mekuria*, 742 F. Supp. 2d 118, 124 (D.D.C. 2010) (citing *Lifted Research Grp., Inc. v. Behdad, Inc.*, 591 F. Supp. 2d 3, 8 (D.D.C. 2008)). "In determining an award of statutory damages, courts look to factors including '(1) expenses saved and profits reaped by the infringing party, (2) revenues lost by the copyright holder, and (3) whether the infringing party acted willfully.'" *Id.* at 125 (quoting *Lifted Research Grp., Inc. v. Behdad*, No. 08-390 (CKK), 2010 WL 2662277, at *5 (D.D.C. June 30, 2010)). The purposes of the increased level of damages are to punish the defendant's willful behavior and deter future infringement. *Lance v. Freddie Records, Inc.*, 986 F.2d 1419, at *2 (5th Cir. 1993) (unpublished) (citing *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 & n.8 (1994)).

Plaintiff has requested $150,000 in statutory damages. Mot. 2-3. There is no evidence of how much Defendants avoided in expenses or how much they profited by their infringement, but Plaintiff alleges that it spent $5,000 in addressing and responding to Defendants' conduct and that it was damaged by $1,000 in lost revenue from the copied advertisements. Mot. 3. "In cases involving willful infringement after a defendant has refused a licensing offer, 'courts frequently award statutory damages in amounts that are between two and three times the license fee refused by the defendant.'" *Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Houston Inc.*, No. H-07-0170, 2007 WL 2363148, at *6 (S.D. Tex. Aug. 16, 2007) (quoting *EMI April Music Inc. v. Know Group, L.L.C.*, No. 3:05-CV-1870-M, 2006 WL 3203276, at *4 (N.D. Tex. Nov. 6, 2006) (collecting cases)). Though it seems likely no license was possible for Plaintiff's work, the Court will apply a similar multiplier to fully compensate Plaintiff and adequately deter future conduct like that of Defendants. In light of Plaintiff's $6,000 in actual damages and Defendants' willful conduct, the Court finds a just award of statutory damages to be three times Plaintiff's actual damages, or $18,000.

    **c.  Permanent injunction**

The introduction and proposed order in Plaintiff's Motion indicate that Plaintiff believes it is entitled to a permanent injunction prohibiting Defendants from infringing on Plaintiff's copyrights in the future. Mot. 1; Proposed Judgment 2, ECF No. 45-4. To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiff has not set forth this standard in its motion or any other argument or authority indicating why an injunction is appropriate in this case. Because Plaintiff has not briefed the argument, the Court treats this issue as waived. *See Williamson v. Watco Cos., Inc.*, No. 09-1255, 2010 WL 4117745, at *3 (W.D. La. Oct. 13, 2010) ("'failure to brief an argument in the district court waives that argument in that court'") (quoting *Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F. Supp. 2d 653, 658 n.9 (S.D. Tex. 2008)). Even were the Court to consider it, on the present record the Court does not find a permanent injunction warranted because there is no indication that Plaintiff is likely to suffer an irreparable injury or that the monetary damages the Court is awarding in this order are inadequate to compensate Plaintiff for its injury. Accordingly, Plaintiff's request for a permanent injunction is denied.

### d. Attorneys' fees and costs

Plaintiff also argues it is entitled to recover its attorneys' fees and costs as the prevailing party in a copyright infringement action, pursuant to 17 U.S.C. § 505. Mot. 3. That statutory provision grants courts discretion to award "the recovery of full costs" and "a reasonable attorney's fee to the prevailing party," except in actions brought by or against the United States or one of its officers. 17 U.S.C. § 505. Despite this broad statutory discretion, in the Fifth Circuit an award of fees to the prevailing party in a copyright action is "'the rule rather than the exception'" and fees "'should be awarded routinely.'" *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) (quoting *McGaughey v. 20th Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994)). There is no precise requirement for determining whether and how much to award in fees, but instead courts should use their equitable discretion. *Fogerty*, 510 U.S.

at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-437 (1983)). Some factors courts should consider are "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty*, 510 U.S. at 534 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

The facts here do not justify a departure from the general Fifth Circuit rule of awarding costs and fees to the prevailing party. Based on the posture of the case, the Court concludes Plaintiff's case was not frivolous, was reasonable, and was properly motivated. Defendants' conduct, by contrast, was less proper. Since filing its Amended Answer on September 2, 2010, Defendants have been almost entirely unresponsive. *See* Am. Answer, ECF No. 24. Even if there were extenuating reasons for Defendants to abandon this case, abandon it they did, and this abandonment in no way justifies giving Defendants relief from the award of fees and costs.

When determining exactly what amount of fees is reasonable to award, district courts in the Fifth Circuit use the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). This involves a two-step procedure. *Id.* First, the district court must determine a figure based on a reasonable number of hours and a reasonable billing rate. *Id.* at 324. Then, the court may adjust that figure upward or downward based on its consideration of twelve factors, namely:

> (1) the time and labor required for the case; (2) the novelty and difficulty of the issues involved; (3) the skill required to litigate the case; (4) the ability of the attorney to accept other work; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances of the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the

attorney-client relationship; and (12) awards in similar cases.
*EsNtion Records, Inc. v. TritonTM, Inc.*, No. 3:07-CV-2027-L, 2010 WL 3446910, at *3 n.2 (N.D. Tex. Aug. 31, 2010) (citing *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987)). Application of the twelve factors need not be "'excruciatingly explicit,'" but the court must articulate and clearly apply them. *Kellstrom*, 50 F.3d at 331 (quoting *Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990)). Contemporaneous billing records or other sufficient documentation is customarily required to support a request for attorneys' fees. *Id.* at 324.

Here, Plaintiff has adequately supported its claim for costs, so the Court awards Plaintiff $1,256.80 in costs. *See* Lila Decl. ¶ 6. However, Plaintiff has entirely failed to provide appropriate documentation of its attorneys' fees. Plaintiff has not provided any records of the time spent or the rate charged, much less an explanation of how that rate compares to those charged by other attorneys. *Cf. RMC Publ'ns, Inc. v. Doulos PM Training*, No. 3:07-CV-2139-O, 2010 WL 742575, at *5 (N.D. Tex., Mar. 3, 2010) (awarding fees where party provided "highly detailed billing records and records of costs . . . with an authoritative study establishing the standard billing" rates of attorneys in the field). Nor has Plaintiff submitted any evidence that would allow the Court to apply the lodestar factors. Moreover, despite the Court's plain order to segregate the amount of fees and costs incurred that relate to the scheduling of the alternative dispute resolution proceeding, *see* Notice of Sanctions 4, Plaintiff has only separated the fees into categories for pre-litigation expenses, litigation expenses, and expenses for local counsel. Finally, the little justification Plaintiff has provided for its fees is puzzling, since it indicates "[p]reparation, filing, research, and service" for several documents that it does not appear were ever filed in this case, such as an amended complaint, motion for temporary

restraining order, motion for preliminary injunction, motion for discovery, and motion for limited discovery. Lila Decl. ¶ 4.

The party seeking the fees bears the burden of submitting adequate evidence of what fees are reasonable, and Plaintiff has not done so. *See Kellstrom*, 50 F.3d at 324 ("[T]he party seeking reimbursement of attorneys' fees . . . has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement.") (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)) (alteration and ellipsis in original). In light of the gross inadequacy of Plaintiff's supporting documentation, Plaintiff's request for attorneys' fees is denied.

If Plaintiff still wishes to recover its attorneys' fees, it should submit proper documentation as specified in Local Rule CV-7(i). Plaintiff should also consult this Court's Notice of Sanctions and comply with the instructions therein.

### 2. Unfair competition

Plaintiff's second, third, and fourth claims are for unfair competition under 15 U.S.C. § 1125(a), the California Business and Professions Code, and California common law, respectively. Plaintiff argues in its Motion that it is entitled to punitive damages under a California statute based on these alleged violations. Mot. 3. However, in its Complaint Plaintiff does not indicate precisely what conduct of Defendants it believes gave rise to those claims. Instead, these sections of the Complaint consist of mere conclusory statements that "Defendants' acts, as set forth above," constitute violations of law. Similarly, in its Motion Plaintiff only states that the misappropriation of Plaintiff's advertisements gave rise to these claims. Mot. 3.

In reviewing the Complaint to determine if it contains a sufficient basis for judgment, the Court is mindful that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions") (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Because the Complaint does not even recite the elements of claims two, three, and four, much less properly plead specific facts to support each element of those claims, the Court finds the Complaint does not provide a sufficient basis for judgment on those claims.

Even were the Court inclined to investigate the elements of Plaintiff's claims and comb through the record to determine whether Plaintiff sufficiently pleaded facts to support each element of those claims, the Court would still find that the pleadings do not present sufficient basis for judgment. Regarding Plaintiff's claim for unfair competition under 15 U.S.C. § 1125(a), Plaintiff appears to be asserting a claim for "reverse passing-off," meaning Defendants were misrepresenting Plaintiff's work as their own. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 148 n.41 (5th Cir. 2004) (citing *Dastar Corp. v. 20th Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003)). To make out a claim of reverse passing-off, a plaintiff must prove "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin."

*Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) (citing *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 781-85 (2d Cir. 1994)). Leaving aside whether Plaintiff has properly pleaded facts to support elements one, three, and four, the Court finds Plaintiff has failed to plead facts to support element two, false designation of origin. False designation of origin cannot be proven simply by showing a copyright violation. *Id.* Plaintiff must allege some other fact indicating Defendants falsely portrayed the advertisements on its website as being original, which Plaintiff has not done. *See id.* Accordingly, the Court finds insufficient basis in the pleadings for this claim and denies judgment on it.

Regarding Plaintiff's state law claims for unfair competition and deceptive trade practices, state law claims, whether based on statute or common law, that involve the same subject matter as copyright law and protect rights equivalent to those protected by the Copyright Act are preempted. *Daboub v. Gibbons*, 42 F.3d 285, 288-90 (5th Cir. 1995). Because Plaintiff's statutory and common law claims for unfair competition and deceptive trade practices both appear to involve the same subject matter as its copyright claim, namely, wrongful copying of Plaintiff's copyrighted work, the Court holds those claims are preempted and denies judgment on them. *See id.*; *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150-52 (9th Cir. 2008) (affirming dismissal of claim under Cal. Bus. & Prof. Code § 17200 based on copyright infringement as preempted by federal copyright law). And because Plaintiff cannot recover on its state law claims, the Court does not decide whether it would be entitled to the punitive damages it requests.

### 3. Computer Fraud and Abuse Act

#### a. Sufficient basis in the pleadings

Plaintiff's final claim is that Defendants violated 18 U.S.C. § 1030, a provision of the CFAA dealing with unauthorized access to computers. Mot. 3. Section 1030(g) creates a private right of action for violations of the statute, and to prevail on such a suit a civil plaintiff must prove a violation of one of the subsections in § 1030(a) and also that the violation involved one of the factors set forth at § 1030(c)(4)(A)(i)(I)-(V). 18. U.S.C. § 1030(g); *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009). Plaintiff has specifically alleged a violation of § 1030(a)(4), which requires proof of four elements: "(1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting 18 U.S.C.A. § 1030(a)(4)). "Protected computer" is defined in 18 U.S.C. § 1030(e)(2) to mean a computer "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2).

Plaintiff's claim has a sufficient basis in the pleadings. Regarding the first element, accessing a protected computer, Plaintiff has alleged Defendants accessed a protected computer by averring that Defendants accessed its website. *See* Compl. ¶ 14; *see also Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010) (indicating that a computer connected to the Internet is a protected computer under the CFAA). Regarding the second element, access without or exceeding authorization, Plaintiff has alleged that Defendants

17

accessed Plaintiff's website for the purpose of obtaining copies of advertisements others had placed there and for placing advertisements for Defendants' website there. *See* Compl. ¶¶ 14-16. While Defendants may have originally had authorization to access Plaintiff's site as a member of the regular public, Plaintiff has adequately alleged that Defendants exceeded the scope of that authorization by using the information found on the website for other purposes. *See United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("the concept of exceeds authorized access may include exceeding the purposes for which access is authorized"). Additionally, even if accessing Plaintiff's website to copy or place advertisements did not exceed Defendants' originally authorized access, copying or placing advertisements after Plaintiff explicitly requested that Defendants not do so, *see* Compl. ¶¶ 14-16, plainly did.

With respect to the third element, "'the term 'defraud' . . . simply means wrongdoing and does not require proof of common law fraud.'" *Multiven*, 725 F. Supp. 2d at 892 (quoting *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008)). But a showing of 'intent to defraud' requires more than just proof of unauthorized access; "some taking, or use, of information" is likely necessary. *Id.* (quoting *Yonkers*, 428 F.3d at 509). Plaintiff has alleged a taking of information in violation of copyright law, *see* Compl. ¶¶ 17-24, which is sufficient for this element.

Finally, for the fourth element, furthering the fraud and obtaining anything of value, Plaintiff has alleged that the access was intended to obtain the advertisements, *see* Compl. ¶ 14, and that the advertisements it obtained had value. *See* Decl. of David Rose ("Rose Decl.") ¶ 11, ECF No. 45-2. Plaintiff has sufficiently pleaded this element. Regarding the separate requirement of proof of one of the factors found at § 1030(c)(4)(A)(i)(I)-(V), Plaintiff has alleged

that it was damaged by at least $5,000 in one year, which satisfies factor § 1030(c)(4)(A)(i)(I).

In light of all these allegations, the Court finds a sufficient basis in the pleadings for judgment on Plaintiff's CFAA claim.

### b. Damages

Section 1030(g) allows for the award of compensatory damages to any plaintiff "who suffers damage or loss by reason of a violation" of § 1030. 18 U.S.C. § 1030(g). "Loss," as defined in the statute, means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Losses include "[c]osts associated with investigating intrusions into a computer network and taking subsequent remedial measures." *Multiven*, 725 F. Supp. 2d at 895.

Plaintiff has submitted affidavit evidence that it spent approximately $5,000 "taking action and addressing defendants' computer fraud and abuse." Rose Decl. ¶ 10. Therefore, the Court finds $5,000 in compensatory damages to be appropriate.

### C. Third Motion to Withdraw

Defendant Wing Walkers has asked the Court to allow Cheng to withdraw because he cannot communicate with his client, possesses no documents belonging to his client, and is unaware of his client's current location. 3d Mot. to Withdraw 2.

As the Court has set forth above, Defendants appear to have utterly abandoned their defense of this case, and in Wing Walkers' case this abandonment has included ignoring its own attorney, Cheng. Despite this, Cheng has continued to faithfully represent Wing Walkers to the

best of his ability, and in fact has been admirably forthcoming with the Court concerning the status of the matter. The Court finds no fault on Cheng's part for the developments in this case to date, and specifically holds him blameless for the ultimate outcome. The judgment being entered today is the result of Defendants' intransigent refusal to cooperate with Plaintiff or follow this Court's orders, not any deficiency on Cheng's part. Accordingly, in light of the judgment being entered today, the Court grants Cheng's Third Motion to Withdraw, and denies Cheng's first Motion to Withdraw as moot. If Wing Walkers wishes to contest this judgment in this Court or on appeal, it must engage substitute counsel to do so.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion, ECF No. 45, is **GRANTED** in part. Defendants shall **PAY** Plaintiff $23,000.00 in damages and $1,256.80 in costs, for a total of $24,256.80. Plaintiff's request for attorneys' fees is **DENIED**. Plaintiff's second, third, and fourth claims are **DENIED**. Defendant Wing Walkers's Third Motion to Withdraw, ECF No. 41, is **GRANTED**. Defendant Wing Walkers's Motion to Withdraw, ECF No. 22, is **DENIED** as moot.

**SO ORDERED**.

**SIGNED** on this 3rd day of May, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE